Ross v. Fitzgerald.

---

ROBERT S. ROSS, appellant,

*v.*

JAMES N. FITZGERALD, respondent.

A. Hooley, a member of a firm, died, leaving in his will a direction to his trustees to withdraw his interest from the firm business as soon as practicable, and invest the proceeds. The trustees, with a third person, formed a new firm and kept the stock of the old firm in their business, allowing the Hooley estate $53,000 for the interest of the deceased. This sum was never paid to the estate and invested. More

---

NOTE.—No brief on the part of the appellant in this case was furnished to the reporter.—REP.

Ross *v.* Fitzgerald.

than three years after the death of H., the trustees borrowed of Ross $7,100, to be used in the business of the new firm for the purpose, as they allege, of enabling them to pay to the Hooley estate the firm debt of $53,000. As collateral security for such loan, they assigned to Ross "a trust mortgage, which they held as such trustees."—*Held*,

(1) That such assignment was a breach of trust, inasmuch as the proceeds therefrom were to be applied to the aid of a business of which the trustees were partners.

(2) That the facts in the case show that Ross knew of the purpose for which the money was borrowed, and that he knew the facts which made its borrowing a breach of trust, and, hence, there should be a decree that he re-assign the mortgage.

---

The bill in this case is filed by the receiver of the trust estate created by the will of Abraham Hooley, to compel the defendant to re-assign a bond and mortgage which was made to and held by the trustees of said Hooley's estate as a part of said estate, and was by them assigned to said defendant, Ross, as security for a loan of money made to a firm of which the trustees were partners. The cause was heard before Advisory Master Bedle, who delivered the following opinion:

The evidence satisfies me that Ross knew that he was taking a trust security as collateral for loans to Gieve & Co., and not to the trustees as such, and he should not be permitted to profit by the breach of trust. He knew Gieve & Co. were then in an embarrassed condition, and, having knowingly taken the trust security as collateral for moneys to be loaned to Gieve & Co., he cannot be protected, even if he expected that Gieve & Co., by the relief afforded, would be able to continue business, and thereby pay the Hooley estate. Ross took the risk, and the Hooley estate should not suffer.

The complainant is entitled to a decree for the surrender of the bond and mortgage and assignment, and a re-assignment thereof, and to an account of any moneys received by Ross thereon or for his benefit. The complainant is also entitled to costs.

*Mr. J. Linn,* for the appellant.

*Mr. S. B. Ransom,* for respondent, cited—

*Hill on Trustees 164; Meade* v. *Lord Orrey, 3 Atk. 238; Earl Brooks* v. *Bulkley, 2 Ves. 498; Taylor* v. *Stilbert, 2 Ves. Jr. 437; Crofton* v. *Ormsby, 2 Sch. & Lef. 583; Sudg. V. & P. 296; Wormley* v. *Wormley, 8 Wheat. 421; Shepherd* v. *McEvers, 4 Johns. Ch. 136; Haythorp* v. *Hook, 1 Gill & J. 270; Swoope* v. *Trotter, 4 Port. 27; Ward* v. *Smith, 3 Sandf. 592; Olisen* v. *Platt, 3 How. (U. S.) 333; Williamson* v. *Brown, 15 N. Y. 354.*

The opinion of the court was delivered by

REED, J.

Abraham Hooley died July 28th, 1873.  At the time of his death, he was in business, as partner, with Abraham Gieve, under the firm name of Abraham Hooley & Co.  By his will he appointed Abraham Gieve and Samuel G. Cutts his trustees.  Among other directions in that instrument was the following:

"I direct my trustees to withdraw my interest from the firm of Abraham Hooley & Co. as soon as practicable after my death, and invest the same, with all other moneys that may be on hand at the time of my death, or that may hereafter come into their possession from sales of any portion of my personal estate, in first mortgages on improved real estate in New York or New Jersey, or in government bonds."

Hooley had a two-thirds interest, and Gieve a one-third interest, in the business of Abraham Hooley & Co.  In January, 1874, about five months after the death of Hooley, a new firm was organized, consisting of Abraham Gieve, Samuel G. Cutts and one McKenzie.  The merchandise of the old firm was used in the business of the new firm, and Mr. Hooley's portion was put in on the basis of sixty per cent., amounting to $53,400.  This amount was never paid by the new firm, and, of course, was never invested in bonds

Ross *v.* Fitzgerald.

and mortgages or in government securities, by the trustees, as directed by the will.

In January, 1877, three years after the organization of this new firm, this state of affairs continued to exist. At this time the trustees held a bond and mortgage, which they had taken, as trustees, for a loan of trust funds made to Jacob Weart and others. Desiring money in connection with the business of the new firm of Abraham Gieve & Co., they borrowed of Ross, the defendant, the sum of $7,100, assigning to Ross this bond and mortgage as collateral security. The question here is, whether the title of Ross to this mortgage is valid as against the *cestuis que trust* represented in this suit by the receiver.

That the act of the trustees in leaving the interest of the Hooley estate in the position of a simple contract debt of the new firm for three years, was a breach of trust, is too obvious for argument. Outside of the express directions of the will, the conduct of the trustees in so long leaving this interest outstanding in the business, and upon the mere personal security of the new firm, was a breach of trust. *Townley* v. *Sherburne, 2 Lead. Cas. Eq. *874, *887 notes ; 1 Perry on Trusts § 440 ; Kirkman* v. *Booth, 11 Beav. 273.*

By the terms of the will, the trustees were to withdraw Hooley's interest in the business as soon as practicable, and invest the value of such interest in certain securities. It was a direct instruction that it should not remain to be used in the business, and so be subjected to its fluctuations and dangers, and an equally direct instruction that it should be otherwise invested. The acts of the trustees were in direct contravention of the language of the instrument under which they were acting. Those acts were such as to not only leave a portion of the trust property outstanding as a personal debt, but so outstanding as to leave the trustees their own debtors. They were, in fact, using the amount of this part of the Hooley estate in their own business, as members of the new firm. The new firm stood as a debtor to the Hooley estate after the estimation of the amount of

the latter's interest at the time of the organization of the new firm. Whenever the " interest " of the Hooley estate in the business of the new firm is mentioned in the case, it, upon examination, will be found to mean merely this—that the new firm owed the estate a debt of $53,000.

Now, the money borrowed of Ross was designed to assist the new firm in their business, and the only method in which it could aid the Hooley estate would be in the possibility that the firm would be abler to pay the larger debt to the estate. The assignment of a mortgage held as a portion of the trust estate, to raise money to loan to a debtor of that estate, in the hope of saving the larger sum, especially when the trustees themselves are the debtors, and the debt exists only because of a breach of trust, is a use of trust property that receives no approval from reason or authority. *1 Perry on Trusts* § *464.*

It seems to me clear that the act of pledging this bond and mortgage was in breach of the fiduciary duty of the trustees. But this fact does not necessarily invalidate the title of Ross. Unless he is chargeable with notice, actual or constructive, of this breach of the trust, his title cannot be impeached. His counsel invokes the doctrine enunciated in the cause of *Foster* v. *Dey, 12 C. E. Gr. 599,* and claims that Ross's title can be defeated only by evidence showing that, at the time of the assignment, he knew that the trustees contemplated a breach of trust and intended to misappropriate the money borrowed, or were, by the very act, applying it to their own private use. In that case, the purchaser had no knowledge of the object for which the money was to be used. In the present case, the purchaser knew for what purpose the borrowed money was intended.

Mr. Ross had been related to both firms by business transactions in the way of loans. He was also a brother-in-law of both Mr. Hooley and Mr. Gieve. He knew that a new firm had been organized at the beginning of 1874. He knew what was meant by the interest of Mr. Hooley in this new firm. He knew that it meant that the new firm owed

the estate for the amount of Hooley's property which they had continued to use in their business venture; that it was, in fact, a debt due from A. Gieve & Co. to the trustees of this estate. He says, in his testimony, that the trustees wanted it to protect the interest of Mr. Hooley in the concern of A. Gieve & Co., which was two-thirds of the goods which were never paid for. He says he "knew that they had never paid the estate for those goods."

Gieve says: "I went to him expressly for the purpose of keeping the business of Abraham Gieve & Co. going; the estate of Abraham Gieve & Co. was in liquidation, and it was essential that the business should not be disturbed. Q. You went and borrowed the money to prevent the sheriff from stopping you from liquidating—you told him that? A. Yes, sir. Q. When you got subsequent sums, it was for the same purpose? A. Exactly the same purpose.

From all the evidence, I have no doubt whatever that Mr. Ross was fully conversant with the facts relative to the affairs of the Hooley estate in connection with its interest in the business of Gieve & Co., and he therefore knew that such interest was merely a debt owing by this firm to the trustees of the estate. He knew that the $7,100 were to be used by Gieve & Co. in their business for the purpose of affording aid in a critical period of that business. He knew that the only way that such loan could assist the Hooley estate would be that, by the aid of this loan, the firm might evade the imminent peril of insolvency, and thus be enabled to pay all its debts, including the debt due to this estate. It presents a clear case of the use of the proceeds of trust property in the private business of the trustee, with a knowledge by the assignee of such property of the contemplated breach of trust. He had sufficient information as to the facts; he is chargeable with a knowledge of the law, and he has no title to the mortgage in question.

The decree should be affirmed.

Decree unanimously affirmed.